[No. H012456. Sixth Dist. Apr. 19, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
CHARLES ROLAND STEVENS, Defendant and Appellant.

COUNSEL

Martin James Elmer, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Ronald A. Bass, Assistant Attorney General, Stan Helfman and John R. Vance, Jr., Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

PREMO, J.—Defendant Charles Roland Stevens was charged by information with four counts of intercepting cordless telephone communications.

(Pen. Code, § 632.6, subd. (a).)[1] He pleaded nolo contendere to two of the counts. He appeals the judgment of conviction, contending that section 632.6 is invalid because the area is preempted by federal law.

We affirm.

## FACTS

After defendant's van was stopped by Officer Duscio, defendant consented to a search of the vehicle. Duscio found inside the vehicle electronic equipment, 24 audiocassettes with names of women handwritten on them, a scanner, and a tape recorder.

Asked about the audiotapes, defendant told Duscio that his hobby was "to listen to people." Subsequent police investigation revealed that the tapes were recordings of conversations made by the women on cordless telephones. The identities of some of the other parties to the conversations were later determined.

The scanner in defendant's vehicle allowed defendant to listen in on the radio frequencies of the cordless telephones.

## DISCUSSION

We reject, for lack of merit, defendant's contention that the activity proscribed by section 632.6, subdivision (a) (intercepting cordless telephone communications),[2] is preempted by federal law.

In arguing preemption, defendant cites to the Communications Act of 1934 (47 U.S.C. § 151 et seq.) (hereafter, Communications Act), which created the Federal Communications Commission (hereafter, FCC) and the federal eavesdropping and wiretapping statutes (18 U.S.C. §§ 2510-2521).

The test to determine whether a state statute is preempted by federal law was set forth by the United States Supreme Court in *Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 146-147 [10 L.Ed.2d 248, 259-260, 83

---

[1]Further statutory references are to the Penal Code unless otherwise stated.

[2]Section 632.6, subdivision (a), provides in relevant part: "Every person who, maliciously and without the consent of all parties to the communication, intercepts, receives, or assists in intercepting or receiving a communication transmitted between cordless telephones . . . , between any cordless telephone and a landline telephone, or between a cordless telephone and a cellular telephone shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."

S.Ct. 1210], and restated in *Head* v. *New Mexico Board* (1963) 374 U.S. 424, 430 [10 L.Ed.2d 983, 988-989, 83 S.Ct. 1759]. In *Head*, the court stated: "In areas of the law not inherently requiring national uniformity, our decisions are clear in requiring that state statutes, otherwise valid, must be upheld unless there is found 'such actual conflict between the two schemes of regulation that both cannot stand in the same area, [or] evidence of congressional design to preempt the field.' [Citation.]" (374 U.S. at p. 430 [10 L.Ed.2d at pp. 988-989], fn. omitted.) There is intent to preempt where the purpose is to "displace all state regulations." (*Florida Avocado Growers* v. *Paul, supra,* 373 U.S. at pp. 147-148 [10 L.Ed.2d at pp. 259-261].)

We examine the Communications Act first: "For the *purpose* of regulating *interstate* and *foreign* commerce in communication by wire and radio so as to make available, so far as possible, to all the people of the United States a rapid, efficient, Nation-wide, and world-wide wire and radio communication service with adequate facilities at reasonable charges, for the purpose of the national defense, for the purpose of promoting safety of life and property through the use of wire and radio communication, and for the purpose of securing a more effective execution of this policy by centralizing authority heretofore granted by law to several agencies and by granting additional authority with respect to *interstate* and *foreign* commerce in wire and radio communication, there is created a commission to be known as the 'Federal Communications Commission,' which shall be constituted as hereinafter provided, and which shall execute and enforce the provisions of this chapter." (47 U.S.C. § 151, italics added.)

Pursuant to this purpose clause, 47 United States Code section 152 provides in relevant part: "(a) The provisions of this chapter shall apply to all *interstate* and *foreign* communication by wire or radio and all *interstate* and *foreign* transmission of energy by radio, which originates and/or is received within the United States . . . . [¶] (b) . . . [*N*]*othing* in this chapter shall be construed to apply or to give the Commission jurisdiction with respect to (1) charges, classifications, practices, services, facilities, or regulations for or in connection with *intrastate* communication service by wire or radio of any carrier . . . ." (Italics added.)

As should be noted, the express purpose of 47 United States Code sections 151 and 152 is to regulate interstate and foreign communications. By express language, intrastate communication is excluded.

Other provisions of the Communications Act reflect that purpose. Thus, 47 United States Code section 556, entitled "Coordination of Federal, State, and local authority," states in relevant part: "(a) *Nothing* in this subchapter

shall be construed to affect any authority of any State, political subdivision, or agency thereof, or franchising authority, regarding matters of *public health, safety*, and *welfare*, to the extent consistent with the express provisions of this subchapter." (Italics added.)

So also, 47 United States Code section 227(e)(1), which provides: "Except for the standards prescribed under subsection (d) of this section and subject to paragraph (2) of this subsection, *nothing* in this section or in the regulations prescribed under this section shall preempt any State law that imposes *more restrictive intrastate requirements or regulations on, or which prohibits* —[¶] (A) the use of telephone facsimile machines or other electronic devices to send unsolicited advertisements; [¶] (B) the use of automatic telephone dialing systems; [¶] (C) the use of artificial or prerecorded voice messages; or [¶] (D) the making of telephone solicitations." (Italics added.)

Although it may be argued that 47 United States Code section 227 does not specifically mention cordless telephones, the point is that the Communications Act invariably excludes intrastate communications from its coverage whenever the need to make the exclusion clear comes up.

We are not the first to read the Communications Act in this fashion. In *Pine Tree Tel. & Tel.* v. *Public Util. Com'n* (Me. 1993) 631 A.2d 57, 62, the Supreme Judicial Court of Maine held that while the Communications Act gave the FCC authority to regulate " 'interstate and foreign commerce in wire and radio communication,' " it denied "the FCC jurisdiction 'with respect to . . . intrastate communications service,' " and also held that the "[a]uthority to regulate intrastate services remained with the several states."

In *Sherdon* v. *Dann* (1975) 193 Neb. 768 [229 N.W.2d 531, 535], the Supreme Court of Nebraska held that while "[i]t is undisputed that Congress granted to the Federal Communications Commission the sole and exclusive jurisdiction over interstate and foreign telephone service, . . . [i]t is also undisputed that the Federal Communications Act reserves to the states jurisdiction over intrastate telephone and telegraph communications."

In *Radio Telephone Commun., Inc.* v. *Southeastern Tel. Co.* (Fla. 1964) 170 So.2d 577, 580, the Supreme Court of Florida held that " 'wire, mobile, or point-to-point radio telephone exchange service, or any combination thereof' . . . are essentially intra-state in nature, even though the radio portion of such services might 'spill over' into an adjoining state, since a radio signal cannot recognize nor stop at a state line; and it is clear that Congress intended to reserve to the several states the right to regulate such intra-state services . . . ."

Because intrastate communication is outside the purpose and scope of the Communications Act, defendant's argument that 47 United States Code was intended to blanket the communications field, including intrastate communications, cannot stand.

We now examine the federal eavesdropping and wiretapping statutes (18 U.S.C. §§ 2510-2521).

Defendant does not seriously challenge the proposition that 18 United States Code sections 2510-2521 do not preempt section 632.6, subdivision (a). Indeed, in his reply brief, defendant states that "the federal law which preempts state regulation of cordless phone radio transmission is not Title III [of the Omnibus Crime Control and Safe Streets Act of 1968], but the Federal Communications Act and its ancillary regulations."

Two decisions of the California Supreme Court (*Halpin* v. *Superior Court* (1972) 6 Cal.3d 885 [101 Cal.Rptr. 375, 495 P.2d 1295] and *People* v. *Conklin* (1974) 12 Cal.3d 259 [114 Cal.Rptr. 241, 522 P.2d 1049]) have already held that the Omnibus Crime Control and Safe Streets Act (18 U.S.C. §§ 2510-2521) (hereafter, Omnibus Act) does not preempt state wiretapping legislation that is not more permissive than the federal scheme.

In *Halpin*, where the issue was the admissibility of the electronically monitored and tape-recorded conversation between Halpin and his wife inside a jail facility, the court stated that while Congress intended in the Omnibus Act "to enact comprehensive national legislation, against which all then existing federal and state legislation was to be measured," it "[a]t the same time . . . left room for the states to supplement the law in certain areas, provided the regulations are not more permissive. [Citation.]" (6 Cal.3d at pp. 898-899, fn. omitted.)

*Halpin* was reiterated in *Conklin*, where the issue was whether section 631, subdivision (a), which forbids wiretapping except by law enforcement officers or with the consent of all the parties, was preempted by federal law. In finding no preemption, *Conklin* stated that while both the federal and the state statutes regulate the same area, they differ in their schemes. "[T]he scheme of the federal act is based on the type of communication, that is, whether it is wire or oral; the state act, by contrast, on the type of surveillance, that is, whether it is wiretapping or eavesdropping. [Citation.]" (*People* v. *Conklin, supra,* 12 Cal.3d at p. 263.)

*Conklin* further stated that "[t]he respective powers of the federal and state governments to regulate the field of communications flow from different

sources. Federal power finds its origin in the commerce clause [citations], even where the communications are entirely intrastate [citation]. [Citation.] State power is essentially the police power which is among those powers 'reserved to the States respectively, or to the people.' [Citation.]" (*People* v. *Conklin, supra,* 12 Cal.3d at pp. 262-263.)

Notably, the communications that were intercepted in *Halpin* and *Conklin* were conventional wire telephone communications. Here, on the other hand, the conversations that defendant intercepted were cordless telephone conversations. In a cordless telephone system, communication from the handset to the base unit is transmitted not by wire but by radio signals.

Senate Report No. 99-541, on the Electronic Communications Privacy Act of 1986 (Pub.L. No. 99-508, hereafter, ECPA) which amends title III of the Omnibus Act, described a cordless telephone, viz.: "A cordless telephone consists of a handset and a base unit wired to a landline and a household/business electrical current. A communication is transmitted from the handset to the base unit by AM or FM radio signals. From the base unit the communication is transmitted over wire, the same as a regular telephone call. The radio portions of these telephone calls can be intercepted with relative ease using standard AM radios." (1986 U.S. Code Cong. & Admin. News, at p. 3563.)

Because the instant case involves the interception of the radio portion of a cordless telephone communication, the question is whether the preemption analysis employed in *Halpin* and *Conklin* should be applied to this case. We think it should be.

In *Conklin,* the court analyzed the preemption issue by propounding the question: "[D]id Congress intend to occupy the entire field and thereby intend to exclude state regulation on the same subject matter even where the federal and state laws are not in conflict with each other?" (*People* v. *Conklin, supra,* 12 Cal.3d at p. 265.) In concluding there was no such intention, *Conklin* stated: "Our conclusion . . . that Congress in enacting title III did not intend to occupy the entire field is supported by two indications of its intent. The first is a statement of congressional findings expressing the need for federal legislation and its purpose [citations]; the second is a report referred to in *Halpin,* which was submitted by the Senate Committee on the Judiciary [citation]." (*Id.* at pp. 266-267.)

Nothing in the ECPA manifests a change of intent on Congress's part. To the contrary, the ECPA was enacted precisely to reinforce that intent. Noting that the "tremendous advances in telecommunications and computer technologies" have made existing law " 'hopelessly out of date,' " and that "[e]lectronic hardware making it possible for overzealous law enforcement agencies, industrial spies and private parties to intercept the personal or

proprietary communications of others are readily available in the American market today," the same Senate Report explained that the purpose of the ECPA amendment was "to update and clarify Federal privacy protections and standards in light of dramatic changes in new computer and telecommunications technologies." (1986 U.S. Code Cong. & Admin. News, pp. 3556, 3557, 3555.)

However, although the ECPA was enacted to bring privacy protections up to date with dramatic changes in communications technology, Congress excluded cordless telephones from the definitions of "wire communication" and "electronic communication." (18 U.S.C. §§ 2510(1), 2510(12).) The exclusion was explained in Senate Report No. 99-541, thusly: "Because communications made on some cordless telephones can be intercepted easily with readily available technologies, such as an AM radio, it would be inappropriate to make the interception of such a communication a criminal offense. The wire portion of a cordless communication remains fully covered, however." (1986 U.S. Code Cong. & Admin. News, at p. 3566.)

Clearly, if Congress was not willing or ready to regulate cordless telephones, we cannot ascribe to that body an intent to preempt the field.

Recently (Oct. 25, 1994), Congress enacted the Communications Assistance for Law Enforcement Act (hereafter, CALEA) to amend the ECPA. One of the significant amendments introduced by the CALEA was the inclusion of cordless telephones in the ECPA's definitions of "wire communication" and "electronic communication." (Pub.L. No. 103-414 (Oct. 25, 1994) 1994 U.S. Code Cong. & Admin. News, No. 9, pp. 4290-4291, §§ 202(a)(1), 202(a)(2).)

Congress's decision to include cordless telephones in the coverage of the ECPA was dictated by privacy concerns. Thus, House Report No. 103-827, in recommending the passage of the CALEA, stated: "In the eight years since the enactment of ECPA, society's patterns of using electronic communications technology have changed dramatically. Millions of people now have electronic mail addresses. Business, nonprofit organizations and political groups conduct their work over the Internet. Individuals maintain a wide range of relationships on-line. Transactional records documenting these activities and associations are generated by service providers. For those who increasingly use these services, this transactional data reveals a great deal about their private lives, all of it compiled in one place. [¶] In addition, while the portion of cordless telephone communications occurring between the handset and base unit was excluded from ECPA's privacy protections, the 1991 Privacy and Technology Task Force found that '[t]he cordless

phone, far from being a novelty item used only at "poolside," has become ubiquitous . . . More and more communications are being carried out by people [using cordless phones] in private, in their homes and offices, with an expectation that such calls are just like any other phone call.'" (1994 U.S. Code Cong. & Admin. News, No. 9A, at p. 3497.)

Under the ECPA, as amended by the CALEA, the penalty for intentionally intercepting cordless telephone communications is a fine of up to $500. (18 U.S.C.A. § 2511(4)(b)(ii); 1994 U.S. Code Cong. & Admin. News, No. 9A, at p. 3510.) Section 632.6, subdivision (a), on the other hand, punishes such unlawful interceptions "by a fine not exceeding two thousand five hundred dollars ($2,500), by imprisonment in the county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment." California's legislative scheme is thus not more permissive than the federal scheme.

Because under the ECPA, as amended by the CALEA, cordless telephones are considered a form of wire and electronic communication, and because the ECPA and the CALEA were enacted to serve the same purpose that the outdated title III of the Omnibus Act was intended to serve, we conclude the *Halpin* and *Conklin* preemption analysis applies with equal force to this case.

### DISPOSITION

The judgment is affirmed.

Cottle, P. J., and Elia, J., concurred.

A petition for a rehearing was denied May 19, 1995, and appellant's petition for review by the Supreme Court was denied July 20, 1995.